UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA D. DIXON,

                 Plaintiff,           Civil Action No. 19-11617
                                        Honorable Paul D. Borman
v.                                        Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                 Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [13, 15]

Plaintiff Debra Dixon ("Dixon") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #13, #15), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.    RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Dixon is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #15**) be **GRANTED**, Dixon's Motion for Summary Judgment

(**Doc. #13**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.    REPORT

### A.    Background

Dixon was 44 years old at the time of her alleged onset date of September 2, 2015, and at 5'4" tall weighed approximately 225 pounds during the relevant time period. (Tr. 32, 306, 326).   She completed high school and subsequently earned a "computer certificate." (Tr. 34, 327). Previously, she "did hair and nails" and briefly held a cleaning job, but she was fired from that job after she got into a verbal altercation with a co-worker. (Tr. 35-37). She now alleges disability primarily as a result of right hip pain, high blood pressure, and depression. (Tr. 39-40, 317, 326).

After Dixon's applications for DIB and SSI were denied at the initial level on September 16, 2016 (Tr. 187-91, 204-08), she timely requested an administrative hearing, which was held on August 31, 2017, before ALJ Carol Guyton (Tr. 26-59). Dixon, who was represented by attorney Salina Choice, testified at the hearing, as did vocational expert ("VE") Harry Cynowa. (*Id.*). On April 2, 2018, the ALJ issued a written decision finding that Dixon is not disabled under the Act. (Tr. 170-80). On March 7, 2019, the Appeals Council granted Dixon's request for review of the ALJ's decision.[1] (Tr. 273-76). Subsequently, on April 19, 2019, the Appeals Council issued its own decision, adopting the ALJ's statement of the issues and the evidentiary facts of the case, as well as the ALJ's

---

[1] The Appeals Council accepted review of the ALJ's decision for the purpose of considering evidence that was either not discussed by the ALJ or received after the ALJ issued her decision.

findings and conclusions regarding whether Dixon was disabled under the Act. (Tr. 4-7). Dixon timely filed for judicial review of the final decision on May 31, 2019. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Dixon's medical record, function and disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

**B.     The ALJ's Application of the Disability Framework Analysis**

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the

3

impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Dixon is not disabled under the Act.  At Step One, the ALJ found that Dixon has not engaged in substantial gainful activity since September 2, 2015 (the alleged onset date). (Tr. 173).  At Step Two, the ALJ found that she has the severe impairments of probable osteoarthritis of the right hip, peripheral neuropathy, major depressive adjustment disorder, and obesity. (*Id.*).  At Step Three, the ALJ found that Dixon's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (*Id.*).

The ALJ then assessed Dixon's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following additional limitations: can occasionally climb ramps and stairs, balance, crawl, kneel, stoop, and crouch; can never

4

climb ladders, ropes, or scaffolds; can engage in unlimited balancing; no overhead reaching with the right upper extremity; no exposure to hazardous machinery or unprotected heights; and may only engage in simple, routine tasks involving no more than simple, short instructions and simple work-related decisions.  (Tr. 175).

At Step Four, the ALJ found that Dixon has no past relevant work.  (Tr. 178).  At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Dixon is capable of performing the jobs of hand packager (80,000 jobs nationally), small products assembler (80,000 jobs), and visual inspector checker (80,000 jobs).  (Tr. 179).  As a result, the ALJ concluded that Dixon is not disabled under the Act.  (*Id.*).

Subsequently, the Appeals Council granted Dixon's request for review and issued its own decision, adopting the ALJ's statement of the issues and the evidentiary facts of the case, as well as the ALJ's findings and conclusion that Dixon is not disabled under the Act.  (Tr. 4-7).  Specifically, the Appeals Council considered additional records received after the administrative hearing, but before the ALJ's decision was issued, and concluded that they did not warrant a finding of disability.  (Tr. 5).

### C.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v.*

*Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.     Analysis**

In her motion for summary judgment, Dixon argues that the ALJ erred in: (1) concluding at Step Three of the sequential analysis that she does not meet or medically equal the criteria of any listed impairment; (2) evaluating her subjective complaints of pain; and (3) formulating her RFC and relying on the VE's testimony in response to a corresponding hypothetical question.  (Doc. #13 at 6-21).  Each of these arguments is addressed below.

*1.     The ALJ Committed No Error at Step Three*

At Step Three of the sequential analysis, the ALJ found that Dixon "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]"  (Tr. 173). In her motion, Dixon asserts that "the ALJ erred in finding that [she] did not meet or equal a listed impairment because the ALJ did not provide substantial evidence to find that [her] statements were not consistent with medical evidence, and the ALJ did not account for the totality of Dixon's limitations."  (Doc. #13 at 6).  In addition to the fact that Dixon's argument is wholly conclusory in nature, the Court disagrees with its fundamental premises.

At Step Three of the sequential evaluation process, Dixon bears the burden of establishing that her impairment meets or medically equals a Listing.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).  To prevail, she must prove that her impairments meet "*all* of the specific medical criteria" in the Listing, or "present medical findings equal in severity to *all* of the criteria for the one most similar listed

impairment." *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990) (emphasis in original). Here, however, Dixon does not even identify which specific Listing she allegedly meets.[2] Under such circumstances, the Court cannot be expected to sift through the record for medical findings that might match the criteria of any one of the potentially applicable Listings.[3] *See, e.g., Mortzfield v. Comm'r of Soc. Sec.*, No. 12-15270, 2014 WL 1304991, at *14 (E.D. Mich. Mar. 31, 2014) ("Plaintiff bears the burden of establishing that he meets a particular listing and plaintiff's argument in this regard is not sufficiently developed such that the undersigned can make such a determination."); *see also Cygan v. Comm'r of Soc. Sec.*, No. 14-14356, 2016 WL 1128087, at *1 (E.D. Mich. Mar. 23, 2016) (despite ALJ's "meager step three analysis," no error warranting remand where plaintiff "did not indicate in his initial summary judgment motion what listing(s) the ALJ should have considered, nor did he identify any record evidence in his [summary judgment] briefs that tends to support a step-three determination in his favor") (internal quotations and footnote omitted).

Additionally, Dixon cannot show that she medically equals any Listing. The Sixth

---

[2] At one point, Dixon suggests that "Listing 1.00(2)(a)" is "[t]he relevant Listing[.]" (Doc. #13 at 7). However, the paragraph Dixon quotes (Listing 1.00B(2)(a), actually) is not in itself a Listing but, rather, an introductory paragraph entitled "How we define loss of function in these listings[,]" and it constitutes only an interpretive aid for use in analyzing the eight specific Listings contained in Section 1.00 of Appendix 1, which address impairments of the Musculoskeletal System.

[3] In her reply brief, Dixon argues – for the first time – that her osteoarthritis "falls under listing 1.04." (Doc. #16 at 3). But, Listing 1.04 applies to "Disorders of the spine," which is not applicable where Dixon's osteoarthritis involves the right hip. (Tr. 173). The ALJ properly evaluated Dixon's impairment under Listing 1.02, which covers "major dysfunction of a joint" (Tr. 174), and Dixon does not point to any error in this aspect of the ALJ's analysis. Dixon also references Listing 12.04(A) in her reply brief, which covers depressive-related disorders, but she makes no effort to identify specific evidence satisfying each of the criteria of this Listing. (Doc. #16 at 3). As such, this argument, too, is without merit.

Circuit has recognized that "medical equivalence" can be found in three ways:

> (1) the claimant has a listed impairment but does not exhibit the specified severity or findings, yet has "other findings" that are "at least of equal medical significance" to the criteria;
>
> (2) the claimant has a non-listed impairment that is "at least of equal medical significance" to a listed impairment; or
>
> (3) the claimant has a combination of impairments which do not individually meet a Listed Impairment, but are "at least of equal medical significance" to a listing when viewed in totality.

*Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 n. 2 (6th Cir. 2011) (quoting 20 C.F.R. §§ 404.1526, 416.926); *see also* Social Security Ruling ("SSR") 17-2p, 2017 WL 3928306, at *2 (Mar. 27, 2017).  But, again, Dixon failed to identify any specific Listing she thinks she medically equals, and instead simply argued that she medically equals an unspecified Listing by virtue of her "disabling pain[.]"  (Doc. #13 at 8).  As discussed in greater detail below, however, the ALJ's evaluation of Dixon's subjective complaints of pain, adopted by the Appeals Council, is supported by substantial evidence in the record. *See infra* at 12-15.  Thus, where Dixon fails to state the particular Listing in issue, and fails to identify any record evidence that might be of equal medical significance to the Listing's criteria, she has not satisfied any of the tests articulated in *Reynolds* for medical equivalence.

Moreover, the ALJ's Step Three findings are supported by substantial evidence in the record.  For example, the state agency reviewing physician, Delois Daniels, M.D., reviewed Dixon's file on July 27, 2016, noting that Dixon has the primary impairment of "Osteoarthrosis and Allied Disorders" but finding that she does not meet or medically equal

9

the criteria of a listed impairment.  (Tr. 142-43, 157-58).  As the Commissioner notes, the vast majority of Dixon's medical records were in front of Dr. Daniels as of the date of her review,[4] and Dixon does not identify anything in later-submitted medical records that would undermine Dr. Daniels' opinion.  (Doc. #15 at 12).  The ALJ gave Dr. Daniels' opinion great weight (Tr. 177) – a finding that Dixon does not challenge.  Accordingly, the opinion constitutes substantial evidence in support of the ALJ's Step Three findings.  *See Brown v. Astrue*, No. 08-11346, 2009 WL 2993810, at *5 (E.D. Mich. Sept. 16, 2009) (substantial evidence supported finding that the plaintiff did not satisfy Listing 12.04 where state agency physicians opined that he did not, and plaintiff presented no opinion to the contrary); *see also Helm v. Comm'r Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (no categorical requirement that a non-treating source's opinion be based on a complete record).

Dixon also suggests that the ALJ failed to adequately consider her pain in combination with her other severe impairments, and that if the ALJ had done so, "she should have found that a combination of [] Dixon's impairments … is medically equal to a listed impairment."  (Doc. #13 at 7).  Again, however, Dixon fails to specify which

---

[4] Importantly, the record before Dr. Daniels contained the report of Dixon's July 13, 2016 consultative physical examination with Moises Alviar, M.D.  (Tr. 420-27).  During that exam, Dixon complained of pain and numbness on the right side of her body, and pain in her right hip joint.  (Tr. 420).  However, Dr. Alviar observed that she got on and off the examination table without difficulty; her gait was normal; she was able to do tandem, tiptoe, and heel walking without difficulty; and she was able to bend and stoop to 90% and squat to 80%.  (Tr. 421).  The only physical and functional limitations Dr. Alviar suggested were "those that may be associated with her persistent right flank pain and probable arthritis in the right hip joint with decreased range of motion of the right hip."  (Tr. 422).  Notably, Dr. Alviar did not find that Dixon's impairments caused her a significant loss of function.

Listing she believes the ALJ should have applied.  And, where both the ALJ and the Appeals Council expressly found that Dixon does not have a combination of impairments that medically equal a Listing (Tr. 6, 173), they were not required to further articulate their reasoning on this point.  *See* SSR 17-2p, 2017 WL 3928306, at *4 ("Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding.").

Dixon also argues that the Sixth Circuit's decision in *Reynolds* requires remand. (Doc. #13 at 14-15).  Dixon's case is distinguishable from *Reynolds*, however.  In that case, the court noted that although the ALJ found the claimant suffered from both mental and physical severe impairments, he only evaluated whether the claimant met a mental disorder listing, and "[n]o analysis whatsoever was done as to whether [the claimant's] physical impairments [] met or equaled a Listing …."  *Reynolds*, 424 F. App'x at 415.  Thus, the court found that "the ALJ erred by failing to analyze [the claimant's] physical condition in relation to the Listed Impairments."  *Id.* at 416.  In contrast, the ALJ here expressly considered both physical and mental impairment Listings and explained why she did not find that their criteria were met.  (Tr. 173-74) (*e.g.*, "The claimant does not meet listing 1.02, which addresses major dysfunction of a joint . . . Specifically, the claimant neither established that she is unable to ambulate effectively, nor established that she is unable to perform fine and gross movements effectively.").

Additionally, *Reynolds* pre-dates the issuance of SSR 17-2p, which narrowed the adjudicator's duty to articulate the basis for her medical equivalence findings.  For that reason also, *Reynolds* is not helpful to Dixon's case.  Ultimately, it is clear that both the

ALJ and the Appeals Council "actually evaluate[d] the evidence, compared it to [applicable sections] of the Listing, and g[a]ve an explained conclusion, in order to facilitate meaningful judicial review."  *Reynolds*, 424 F. App'x at 416.  This is all that is required.

In summary, the ALJ's Step Three findings are well-supported by medical opinion evidence, and the Appeals Council reasonably adopted those findings.  Dixon has failed to identify any error warranting remand at this step of the sequential evaluation process.

2.   *The Evaluation of Dixon's Subjective Allegations*
*of Pain is Supported by Substantial Evidence*

In her decision, the ALJ found that Dixon's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record …."  (Tr. 176).  The Appeals Council concurred with this finding.  (Tr. 6).  In reaching her conclusion, the ALJ properly considered Dixon's admitted range of daily activities and the fact that she took only ibuprofen – rather than any stronger medication – for pain. (Tr. 176).  The ALJ also found that while Dixon's testimony about her pain was consistent with her report to Dr. Alviar, he only assessed limitations in connection with right flank pain and probable arthritis of the right hip. (Tr. 177).  In addition, as discussed above, the ALJ gave great weight to Dr. Daniels' opinion, which found Dixon's subjective symptomatic complaints only "partially consistent" with the other evidence of record.  (Tr. 145, 160, 177).

In challenging the ALJ's analysis of her subjective allegations of disabling pain, Dixon first argues that the ALJ overstated her activities of daily living, claiming that just because she can "maintain personal care, prepare meals, perform chores, and leave her

house for various reasons" does not necessarily mean that she can perform work on a sustained basis.  (Doc. #13 at 10-11).  But, the ALJ never indicated that the fact that Dixon could engage in these daily activities "necessarily" meant she was not disabled.  Rather, the ALJ appropriately considered Dixon's daily activities as one aspect of her review of the record evidence as it related to Dixon's subjective complaints, and Dixon has not established any error warranting remand.  In her function report, Dixon indicated that she has no problem with personal care, spends 2-3 hours daily preparing meals (including "a lot of baking"), performs cleaning chores "every day" and laundry twice a week, walks and uses public transportation, shops in stores, and visits her mother.  (Tr. 318-21).  Similarly, at the administrative hearing, Dixon testified that on a typical day, she cleans her home, bathes, watches TV, goes for a walk, feeds the birds at a local park, does laundry, and cooks healthy meals; she also goes to the grocery store, visits her family, and goes to church every other week.  (Tr. 46-48).

The ALJ reasonably found that this level of activity is inconsistent with her report of "constant pain of 6-7/10" and a resulting inability to work.  (Tr. 176-77).  Courts have recognized that an ALJ may properly discount a claimant's allegations of pain where they are inconsistent with these types of activities.  *See, e.g., Wilk v. Comm'r of Soc. Sec.*, No. 16-14308, 2018 WL 1075072, at *7 (E.D. Mich. Feb 8, 2018) (ALJ properly considered daily activities, including housekeeping, laundry, cooking simple meals, and shopping); *Schnarr v. Comm'r of Soc. Sec.*, No. 16-13618, 2017 WL 10351834, at *12 (E.D. Mich. Nov. 28, 2017) (ALJ properly considered claimant's ability to care for personal needs, prepare meals, do laundry, and go grocery shopping).  Thus, the ALJ acted well within her

"zone of choice" in finding that Dixon's daily activities contradict her allegations of disabling pain. *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

Dixon also argues that the ALJ erred in her consideration of Dixon's prescribed medication regimen. (Doc. #13 at 11-14). At the administrative hearing, Dixon testified that the only pain medication prescribed to her was "Ibuprofen 800 milligram" (Tr. 40), and that "it's not like they gave me Vicodin's or … Oxycontin or anything like that" (Tr. 42). Relying on this testimony, the ALJ accepted that Dixon was prescribed only ibuprofen for pain and found this to be another factor inconsistent with her subjective complaints of disabling pain. (Tr. 176). This was a reasonable consideration.[5] *See Battice v. Comm'r of Soc. Sec.*, No. 1:12-CV-1389, 2014 WL 1366489, at *9 (W.D. Mich. Mar. 31, 2014) ("[U]se of over-the-counter pain medications undercut his claims of disabling pain.").

In her motion, Dixon also argues that the ALJ should not have held against her the absence of a prescription for "stronger pain medications" because she has a severe mental impairment, and narcotics could interact unfavorably with medications prescribed for her depression, such as Cymbalta. (Doc. #13 at 11-12). This argument is not persuasive. To begin with, this argument was not presented to the ALJ or to the Appeals Council and thus is waived. *See Burgett v. Comm'r of Soc. Sec.*, No. 18-13940, 2020 WL 1249115, at *3-4 (E.D. Mich. Mar. 16, 2020) (arguments not presented during administrative proceedings

---

[5] While Dixon does not reference this in either of her filings, the Court notes that she subsequently submitted a copy of a prescription from University Pain Clinic Detroit for "hydrocodone-acetaminophen 5-325 mg oral tablet," dated January 22, 2018 (Tr. 362), which the ALJ failed to address in her decision. To the extent the ALJ erred in this respect, however, any such error was remediated when the Appeals Council considered the pain clinic records and found that they did not "warrant a different outcome as concluded in the [ALJ's] decision[.]" (Tr. 5).

are waived).  Moreover, Dixon does not argue that the medical information she pulls from various websites, and quotes in her brief, constitutes "new and material evidence" that would warrant remand under sentence six of 42 U.S.C. § 405(g).  And, finally, there is no indication in Dixon's medical records that pain medications stronger than ibuprofen were considered and ruled out because of a potential negative interaction with her other prescribed medications.  Given these facts, the Court cannot find that the ALJ erred in failing to anticipate and evaluate the argument Dixon now makes.  *See Luteyn v. Comm'r of Soc. Sec.*, 528 F. Supp. 2d 739, 751 (W.D. Mich. 2007) ("The court must work with the evidence presented to the ALJ, not with counsel's arguments, in hindsight, regarding evidence that might have been submitted.").

In summary, the ALJ identified substantial record evidence in support of her decision to discount Dixon's subjective complaints of pain.  Where the Sixth Circuit has held that an ALJ's subjective symptom evaluation shall not be disturbed "absent compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), Dixon has identified no error warranting remand.

> 3.    *The ALJ's RFC Finding and Resulting Hypothetical Question to*
> *The VE Adequately Accounted for Dixon's Credible Limitations*

Dixon next argues that the ALJ erred in assessing her RFC because she did not include limitations corresponding to Dixon's subjectively-reported functional limitations (such as her ability to stand for only 30-45 minutes and walk for only 2-2½ blocks).  (Doc. #13 at 17-19).  In making this argument, however, Dixon is merely rehashing her challenge to the ALJ's decision to discount her subjective allegations of pain based on her reported

15

activities of daily living. But, the Court has already considered and rejected this argument, *supra* at 12-15.

Moreover, a review of the ALJ's decision makes clear that she identified substantial evidence supporting both her physical and mental RFC findings (Tr. 175-78), which the Appeals Council adopted (Tr. 6). For instance, in support of her assessment of Dixon's physical RFC, the ALJ afforded "great weight" to the opinions of Dr. Daniels and Dr. Alviar, indicating that both of these opinions concluded that Dixon retains the RFC to perform a limited range of light work. (Tr. 177-78 (citing Tr. 145-48, 420-27)). And, in support of her assessment of Dixon's mental RFC, the ALJ gave "great weight" to the opinion of Julia Czarnecki, MA, LLP, and Herman Daldin, Ph.D., who performed a consultative psychological examination of Dixon on August 24, 2016, and concluded that her "working memory is intact and she should be able to do work related activities at a sustained pace." (Tr. 178, 429-31). The ALJ also gave "great weight" to the opinion of the state agency reviewing psychologist, Jerry Csokasy, Ph.D., who reviewed Dixon's records and concluded that she is able to perform simple/routine tasks on a sustained basis. (Tr. 143-44, 148-49, 158-59, 163-64, 177).[6] Dixon does not acknowledge the opinions of any of these expert medical sources or otherwise challenge the ALJ's reliance on them in

---

[6] The Court also notes the consistency of these opinions with other record evidence. For example, in June 2016, Dixon underwent a psychiatric evaluation at Detroit Central City Community Mental Health. (Tr. 582-597). Although she was noted to be exhibiting signs of depression "because of her financial and housing issues," among other normal findings, it was noted that she was calm, pleasant, and cooperative, her speech was "logical," her thoughts were "linear and goal directed," her memory was intact, and that her concentration and stream of mental activity were normal. (*Id.*) It was also noted that she "did well" while on medication. (Tr. 582).

formulating her RFC.  Under the circumstances, then, where the ALJ supportably found that Dixon's subjective complaints of pain and resulting limitations were not consistent with the overall record, she reasonably relied on the opinions of the multiple state agency medical consultants in formulating Dixon's RFC.  *See* 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1) (state agency consultative examining and reviewing physicians are "highly qualified and experts in Social Security disability evaluation").

At the administrative hearing, the ALJ posed a hypothetical question to the VE that corresponded with her RFC findings.  (Tr. 54-55, 175).  In response, the VE identified jobs existing in the national economy that can be performed notwithstanding those limitations. (Tr. 55).  Dixon now argues that the ALJ's hypothetical was flawed because it "did not ask the [VE] to consider her mental impairments, neither independently nor in combination with her physical impairments."  (Doc. #13 at 21).  This is simply incorrect, as the hypothetical question posed to the VE specifically included limitations to "unskilled work consisting of simple routine tasks involving no more than simple short instructions and simple work-related decisions."  (Tr. 55).  Thus, this argument too is without merit.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(Doc. #15)** be **GRANTED**, Dixon's Motion for Summary Judgment **(Doc. #13)** be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: March 23, 2020                          s/David R. Grand
Ann Arbor, Michigan                            DAVID R. GRAND
                                               United States Magistrate Judge


## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 23, 2020.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
